IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADONAI EL-SHADDAI,
a.k.a., JAMES WILKERSON,

     Plaintiff,                          No. CIV S-06-1898 FCD EFB P

  vs.

B. WHEELER, et al.,

     Defendants.                      FINDINGS AND RECOMMENDATIONS

        Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action, which defendants removed from state court, proceeds on the June 13, 2006, complaint. Plaintiff alleges that defendants Wheeler, Albonico and Turner used excessive force against him, and that defendant Thompson failed to protect plaintiff from retaliation by those defendants. The matter is now before the court on defendants' June 7, 2006, motion to dismiss on the ground that plaintiff failed to exhaust the available administrative remedies. For the reasons explained below, the court construes defendants' motion as one for summary judgment, and recommends that it be granted in part and that the defendants remaining in this action be directed to file an answer.

////

////

# I. Facts

Plaintiff alleges that on May 18, 2005, while he was a prisoner at High Desert State Prison (HDSP), he took legal materials to the law library for copying. Compl., at 2. Defendant Thompson began to copy the papers. *Id.* Defendants Wheeler and Albonico arrived at the law library to escort prisoners who were at the library back to their cells. *Id.* Plaintiff claims that he asked Wheeler for permission to use a stapler, and Wheeler became hostile towards plaintiff. *Id.* Thompson had not finished the copying. Therefore, plaintiff asked Wheeler whether he could be last among the prisoners to be escorted back to his cell. Wheeler again was allegedly hostile and announced that he was taking plaintiff first. While plaintiff waited for his copies, he wrote down the names of Wheeler and Albonico, and of prisoners who witnessed the scene. *Id.*, at 3. Plaintiff claims that in retaliation for his writing names of witnesses, Wheeler attacked plaintiff from behind, grabbing his left arm. Plaintiff went to the ground, whereupon Wheeler allegedly jumped on plaintiff's back and punched him in the back of the head, and slammed plaintiff's face into the floor. *Id.* Albonico then grabbed plaintiff's legs, crossed one over the other and placed his full body weight on plaintiff by jumping on him, breaking plaintiff's right ankle. *Id.* Plaintiff yelled that his leg was broken, and Turner continued to apply pressure on plaintiff's ankle. Plaintiff asserts that during the entire time, he was in waist restraints and he did not resist staff. He asserts that he suffered various injuries, including a broken ankle, a bruised, discolored and swollen right temple area of his head, and neck and back pain.

Defendants have submitted a copy of plaintiff's grievance, which alleges that:

> On 5-18-05 I was schedule [sic] for Priority Law Library access from 12:30 p.m. to 3:00 p.m. due to my legal deadline of 5-20-05 in Wilkerson v. Schwarzenegger, case no. 04AS03173 and 5-26-05 in Wilkerson v. The State of California, case no. 05SC01932. I was not escorted to the law library until 2:15 p.m., at Five [sic] (5) minutes to book recall. Mr. Thompson, Librarian, in formed me he had made several calls to get me to the library and begin copying my legal material. As Mr. Thompson begin [sic] copying c/o Wheeler and c/o Albonico entered the library to escort inmates back to building "5." I informed c/o Wheeler that upon completion of my copies I would need to use the big stapler which is located in the Program Office and if I could be escorted to the Program Office to use it. His response was that they were there to escort inmates back to the building. I asked

2

> that I be taken back last because I was the last [sic] arrive and my copies would be completed by that time. He replied in a hostile tone "no your first so get your stuff." I replied that I was not leaving without my copies. Mr. Thompson stated that he was just about finish [sic]. C/o Wheeler stated, "your leaving now and grabbed me by the arm and I went to the ground. C/o Wheeler and c/o Albonico jumped down on me and begin [sic] pounding my face into the floor and kneeing me in the back of the neck several times, and twisting my arms and legs the whole time I was in restraints and was not resisting. This was witnessed by several inmates and the librarian and the library camera surveillance.
>
> As a result of the assault on my person by c/o Wheeler and c/o Albonico and responding officers I suffered what appear to be a broken right ankle, swollen face, neck, and back pains. Pursuant to California Penal Code 2650, "the person of a p5isoner sentenced to imprisonment in the State prison is under the protection of the law and any injury to his person not authorized by law is punishable in the same manner as if her were not convicted or sentence [sic].

Defs.' Mot. to Dism., Ex. 1. In the space marked "action requested" on the appeals form, plaintiff wrote,

> Based upon the information c/o Wheeler and c/o Albonico be charged pursuant to California Penal Code 243 for the willful and unlawful use of force and violence upon my person.

*Id.* The informal level of review was bypassed. *Id.* The reviewer on the first formal level understood plaintiff to allege that Wheeler and Albonico used force against plaintiff when it was not necessary, and denied relief. Plaintiff appealed to the second formal level of review, arguing that the reviewer did not investigate plaintiff's allegations and was merely trying to "cover up staff misconduct." *Id.* The reviewer on the second formal level outlined plaintiff's allegations against Wheeler and Albonico and the process on the first formal level of review. *Id.* Relief was granted in part based on a finding that adequate inquiry was performed on the first formal level of review. *Id.* The appeal was otherwise denied. Dissatisfied, plaintiff appealed to the Director's Level of Review, alleging the following:

> The officers involved belong to the "Green Wall" satanic gang of rogue guards who assaulted me and then conspired to keep the beating secret. The guards and their supervisors conspired to cover up the beating, their supervisors instructed the guards to falsify their reports. See attached report Lt. Chapman, c/o Wheeler, c/o Albonico, Sgt. Turner, and LTA Thompson.

*Id.* The reviewer on the Director's level understood plaintiff to complain that Wheeler denied

3

plaintiff access to the law library by the use of force and with the assistance of Albonico. *Id.* The decision on the second formal level of review was affirmed.

## II.     Standards Applicable to This Motion

Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure. While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined. The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[1] *Wyatt*, 315 F.3d at 1119. However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). Federal courts appropriately consider affirmative defenses on summary judgment. Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

## III.    Rule 56 Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As explained by the Ninth Circuit, the utility of Rule 56 to screen which cases actually require resolution of disputed facts over material issues (through presentation of testimony and evidence at trial) has been clarified and enhanced.

---

[1] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14

4

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added).  Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

**IV.    Failure to Exhaust**

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statue makes exhaustion a precondition to *suit*." (citation omitted)).  A prisoner seeking leave to proceed *in*

5

*forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for grievance content. *Id*., at §§ 3084.2, 3085. A prisoner need only "describe the problem and action requested." Cal. Code Regs. tit. 15, § 3084.2(a). Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. *Id*., at § 3084.5. A division head reviews appeals on the first formal level, *see id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level. *See id*., at § 3084.5(e)(1). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. *Id*., at § 3084.1(a).

**V.    Analysis**

As noted above, defendants Turner and Thompson assert that plaintiff failed to exhaust any claims against them. Wheeler asserts that plaintiff failed to exhaust the retaliation claim. The court begins with the contentions of Turner and Thompson.

The crux of the argument by Turner and Thompson is that plaintiff did not alert prison officials that he had any problems with these defendants. Plaintiff argues that he incorporated Turner and Thompson when he sought review on the third level of review by alleging that "the officers involved belong to the "Green Wall" satanic gang of rogue guards who assaulted me,"

6

and that the "guards and their superiors instructed the guards to falsify their reports." Pl.'s Opp'n, at 1-2. This hardly fulfills the purpose of the exhaustion requirement. It is important to recall that the exhaustion requirement is designed to "filter out the bad claims and facilitate consideration of the good," by "allow[ing] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 127 S.Ct. at 914. Thus, not only is the requirement *mandatory*; but prisoners must also follow whatever *established procedure* exists. *See Booth*, 532 U.S. at 741 fn. 6; *Woodford v. Ngo*, 126 S.Ct. 2378, 2391-2393 (2006).

The Supreme Court has refused to read into 42 U.S.C. § 1997e any particular formula. It has rejected the argument that a plaintiff must identify in a grievance every officer he might sue in federal court, finding that such a "procedural rule lacks a textual basis in the PLRA." *Jones*, 127 S.Ct. 910, 922. Thus, in *Jones*, the Court iterated that a prisoner properly exhausts when he follows the prison's rules governing the administrative appeals process, *id.*, at 922; *Woodford*, S.Ct. at 2391-2393, and concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* Accordingly, here as long as a California prisoner properly completes the grievance form provided by prison officials, and that form does not require the prisoner to provide names, then the prisoner has complied with the exhaustion requirement. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).

Given the rule announced in *Butler*, of particular significance here is that California's prison grievance procedure requires only that a prisoner "describe the problem and the action requested." Cal. Code Regs. tit. 15, § 30842.2(a). Having examined the appeals plaintiff submitted, the court finds that plaintiff described a problem involving the use of excessive force by particular guards. He named Wheeler and Albonico, and did not suggest that other guards - regardless of their identity - joined in the abuse. Thus, there was no reason for prison officials to believe that they needed to resolve any difficulty presented by any other guard allegedly having joined in the attack. Neither did plaintiff assert that any guards stood by while he was beaten.

1 Unless Thompson left the scene before the attack, the fact of his knowledge of the attack and his
2 passivity is implicit.  But that is the rub: prison officials would not know from plaintiff's
3 grievance that Thompson was present and did not help plaintiff.  The requirement that the
4 prisoner describe the problem means that the prisoner must explain that an omission or failure to
5 act was part of the problem.  Thus, while plaintiff did not need to say much in order to exhaust
6 his claim against Thompson, he had to say something.  This he did not do.  Furthermore, the
7 court finds that plaintiff's assertion on the Director's Level of Review that "the officers involved
8 belong to the 'Green Wall,'" and that they covered for each other is not sufficient to expand the
9 scope of his problem to include an assertion that Turner participated in the attack and Thompson
10 failed to protect him.  This allegation of a cover up does not include any suggestion that part of
11 the problem was that Turner joined the attack and that Thompson failed to protect him.  Rather,
12 it appears that his complaint refers to the grievance process, i.e., "the officers involved,"
13 reasonably construed as referring to the officers encompassed by his initial appeal, engaged in
14 activities to avoid responsibility for their acts.  Although plaintiff attached reports of other
15 officers, he submits them as evidence that the "officers involved," participated in a cover-up.  On
16 the evidence presented a reasonable jury could not find that plaintiff exhausted his claim that
17 Turner joined the attack and that Thompson failed to protect him.  Accordingly, these defendants
18 are entitled to judgment as a matter of law.

19     Defendants Wheeler and Albonico argue that in order to exhaust the claim against them,
20 plaintiff had to tell prison authorities in his appeal that he believed the motivation for
21 defendants' alleged attack was retaliatory.  As noted above, in order to satisfy the exhaustion
22 requirement, a California prisoner need only properly complete the form provided by prison
23 officials, and in particular must  "describe the problem and the action requested."  *Butler*, 397
24 F.3d at 1183.  Plaintiff did describe the problem: defendants Albonico and Wheeler allegedly
25 used force against him when they should not have.  Whether the motive was retaliatory and/or
26 sadistic and malicious solely for the purpose of causing harm are legal determinations to be made

1 later in a civil action but are not conclusions that must specified in a grievance form that does not 2 call for such conclusions. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) 3 (elements of retaliation claim); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (elements of Eighth 4 Amendment excessive force claim). The form does not require prisoners to state the legal 5 theories on which they intend to proceed in federal court any more than they require prisoners to 6 name particular individuals. Insofar as prison officials investigate alleged wrongdoing, the 7 investigating officers presumably will determine the motives of the officers in question where 8 relevant to any consequences for the officers' actions. Thus, even though plaintiff did not 9 specify a retaliation theory in his administrative appeals, he satisfied the requirements of the 10 form. Albonico and Wheeler are not entitled to judgment as a matter of law as to this claim 11 against them.

## VI. Conclusion

For the reasons stated, the court finds that plaintiff failed to exhaust his claims that Turner and Thompson used excessive force against him and that Thompson failed to protect him. However, the court finds that plaintiff has exhausted his claim of retaliation against Wheeler and Albonico.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' June 6, 2007, motion to dismiss, construed as a motion for summary judgment, be granted in part and denied in part as follows:

    a. The motion by Turner and Thompson for judgment on the claim that they used excessive force against plaintiff be granted;

    b. The motion by Thompson for judgment on the claim that he failed to protect plaintiff be granted; and,

    c. The motion by Albonico and Wheeler for judgment on plaintiff's retaliation claim be denied; and

////

2. The remaining defendants be given 30 days to file an answer to the complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 11, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE