IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADONAI EL-SHADDAI,

      Plaintiff,                   No. CIV S-06-1898 KJM EFB P

    vs.

B. WHEELER, et al.,

      Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

                             /

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move for an order declaring plaintiff a vexatious litigant and requiring security. Dckt. No. 78. The filing of the motion acted to stay proceedings, requiring that the court vacate the trial date, which had been set at March 15, 2011. Dckt. Nos. 76, 85. For the reasons that follow, the undersigned recommends that the motion be denied and a trial date be reset.

////

////

////

////

////

1

# I. Facts

Plaintiff alleges that on May 18, 2005, when he was housed at High Desert State Prison ("HDSP"), defendants Wheeler and Albonico used excessive force against him in retaliation for his exercise of First Amendment rights.[1]

## A. Plaintiff's Evidence

According to plaintiff's complaint and deposition testimony, on the day in question HDSP was on "lockdown" and the only way to go to the law library was to be escorted by prison staff. Pl.'s Dep., Dckt. No. 80, at 28. Plaintiff needed to use the law library to meet a filing date in the U.S. Supreme Court. *Id.* at 17. Although he was scheduled to use the library from 12:30 p.m. to 3 p.m., no one arrived to escort him until 2:50 p.m., about 15 minutes before the library closed and five minutes "to book recall." *Id.* at 18, 23; Compl. at 2, ¶ 3. From the time he left his cell, plaintiff was restrained by a waist-chain to which handcuffs were attached. Pl.'s Dep. at 28, 38. Defendants Wheeler and Albonico, correctional officers, were standing in front of the library door when plaintiff arrived. *Id.* at 24. Plaintiff told defendants that he needed to make copies in the library and then staple them using an industrial stapler located in the Program Office, showing them a document from the U.S. Supreme Court stating that only documents that had been stapled would be accepted for filing. *Id.* at 17, 23; Compl. at 2, ¶¶ 4-5. Plaintiff was allowed into the library and he gave his documents to the law librarian to copy. Pl.'s Dep. at 23-24. While the copies were being made, defendants entered the library to escort prisoners back to their buildings. Compl. at 2, ¶ 4; Pl.'s Dep. at 24, 30. Plaintiff told defendant Wheeler again that he needed to use the industrial stapler, but Wheeler replied that "he was not there to take [plaintiff] to the program office but back to the building." Compl. at 2, ¶ 5; Pl.'s Dep. at 24-25.

////

---

[1] All events recounted herein occurred on May 18, 2005 unless otherwise noted.

Plaintiff asked to be escorted after the other prisoners so he could wait for his copies to be made. Compl. at 2, ¶ 6; Pl.'s Dep. at 25. Wheeler replied that he intended to take plaintiff first. Compl. at 2, ¶ 6; Pl.'s Dep. at 25, 27. Plaintiff said he would not return without his copies and asked for defendants' names. Pl.'s Dep. at 25, 27. He copied defendant Albonico's name down from the guard's name tag and told defendants that he intended to file a grievance against them for refusing to take him to the program office. *Id.* at 27, 32. He then walked away from defendants toward the counter where the law librarian was making copies while asking other prisoners present whether they saw defendant Wheeler refuse to help plaintiff and inviting them to be witnesses on his behalf. *Id.* at 29-30. Defendant Wheeler told plaintiff he had to leave right then, as plaintiff stood at the counter writing down the names of other prisoners who were present. *Id.* at 27, 29, 31; Compl. at 2-3, ¶ 7.

Plaintiff alleges that while he was writing down a name, defendant Wheeler rushed plaintiff from behind, causing another prisoner to jump back. Pl.'s Dep. at 27, 31; Compl. at 3, ¶ 8. Defendant Wheeler grabbed plaintiff's arm, and plaintiff, who was still restrained by the waist-chain and cuffs, went to the ground. Pl.'s Dep. at 34-35, 36; Compl. at 3, ¶ 8. Defendant Wheeler followed plaintiff to the ground, jumped on his back, pounded him in the head, punched him several times and slammed his face into the floor. Pl.'s Dep. at 35-37; Compl. at 3, ¶ 8. While this was happening, defendant Albonico grabbed plaintiff's legs, crossed them, and then jumped on them, pressing down until plaintiff's ankle snapped. Pl.'s Dep. at 35, 37-38; Compl. at 3, ¶ 8. Plaintiff was in severe pain and screamed that his leg was broken. Pl.'s Dep. at 38; Compl. at 3, ¶ 8. Sergeant Turner entered the library and jumped on the back of plaintiff's ankles. Pl.'s Dep. at 40. Defendant Albonico tried to apply ankle restraints, but plaintiff's ankles were too swollen. *Id.* Defendants continued to apply pressure to plaintiff's ankle despite plaintiff's screams of pain. Compl. at 8, ¶ 8. Plaintiff could not walk and was escorted from the library in a wheelchair. Pl.'s Dep. at 40. X-rays later verified that plaintiff's ankle had been fractured. Pl.'s Dep. at 39.

**B.     Defendants' Evidence**

On the day of the incident between plaintiff and defendants, defendants were responsible for escorting inmates from the law library back to their assigned buildings before "institutional count" at 4 p.m., in which inmates are physically counted. Dckt. No. 78-5, Albonico Decl. at ¶¶ 10-11; Dckt. No. 78-6, Wheeler Decl. at ¶ 10-11.[2] Once the institutional count has started, almost all inmate movement must stop. Albonico Decl. at ¶ 12; Wheeler Decl. at ¶ 12. The purpose of the count is to "facilitat[e] inmate control and accountability." *Id.*

According to the defendants, when defendant Wheeler told plaintiff that Wheeler would not take him to the program office but instead would escort him back to his building, plaintiff demanded loudly to be taken to the program office and was behaving in a verbally aggressive manner. Albonico Decl. at ¶¶ 13-16; Wheeler Decl. at ¶¶ 13-16. Defendant Wheeler decided to escort plaintiff from the library before other inmates because of plaintiff's aggressive behavior, but plaintiff did not comply with his order and instead turned away from defendant Wheeler and walked toward the back of the library. Wheeler Decl. at ¶ 17; Albonico Decl. at ¶¶ 15-16. Defendant Wheeler felt that plaintiff represented a security threat despite the waist-chain and handcuffs, because plaintiff was acting erratically and throwing his shoulders and body weight around. Wheeler Decl. at ¶ 20. Defendants assert that some inmates can slip out of waist-chains and then use the chain, which still links both wrists, as a weapon. *Id.* at ¶ 6; Albonico Decl. at ¶ 7.

Defendants assert that Wheeler placed his hand on plaintiff's arm, and plaintiff aggressively spun back towards Wheeler. Wheeler Decl. at ¶¶ 23-24; Albonico Decl. at ¶¶ 19-20. Wheeler did not know whether plaintiff was trying to break free or preparing to hit him, and

---

[2] Defendants also cite the California Department of Corrections and Rehabilitation Department Operations Manual ("DOM") in support of their assertions about institutional count. While defendants apparently intended to attach a copy of the relevant portion of that document as Exhibit C to the declaration of defense counsel Ganson, no such copy was filed. Accordingly, the court cannot rely on the DOM as evidence in support of defendants' claims.

4

he feared for his safety. Wheeler Decl. at ¶¶ 25-26. In addition, defendants contend, plaintiff's behavior could cause a riot due to the limited number of correctional officers present, the lack of gun coverage, and the presence of several other inmates. *Id.* at 27.

Defendant Wheeler wrapped his arms around plaintiff's torso and took him to the ground using physical strength, forward momentum, and his body weight. *Id.* at ¶ 28; Albonico Decl. at ¶ 22. Plaintiff landed face- or chest-down on the ground, having turned during the altercation. Albonico Decl. at ¶ 24; Wheeler Decl. at ¶ 28. Plaintiff yelled that his leg was broken, kicked his legs, and thrashed, and to defendant Wheeler it appeared that plaintiff was trying to get other inmates involved. Wheeler Decl. at ¶¶ 29-31. Defendant Wheeler ordered plaintiff to stop resisting, but plaintiff continued to kick. *Id.* at ¶ 32; Albonico Decl. at ¶ 25. Defendant Albonico then placed his shins across plaintiff's legs and used his weight to hold the legs in place until leg restraints could be applied. Albonico Decl. at ¶ 26. Plaintiff continued to resist, so Sergeant Turner, who had arrived on the scene in the meantime, helped control plaintiff's legs. *Id.* at ¶¶ 27-28; Dckt. 78-6, Turner Decl. at ¶¶ 4-5; Wheeler Decl. at ¶ 33. In subduing plaintiff, defendants Wheeler and Albonico were unconcerned about any grievance plaintiff intended to file against them for refusing to take him to the program office. Wheeler Decl. at ¶¶ 34-36; Albonico Decl. at ¶¶ 30-32.

Plaintiff was found guilty of the serious rules violation of willfully resisting a peace officer[3] in connection with the incident in the law library. Dckt. No. 78-4 (Rules Violation Report and records of disciplinary hearing). At the disciplinary hearing, plaintiff testified that he walked away from defendant Wheeler to write down the names of other inmates. *Id.* at 5. When

---

[3] The Rules Violation Report cites to California Code of Regulations title 15, § 3005(c), which has since been amended and renumbered. The relevant rule may now be § 3005(d), which prohibits inmates from "willfully commit[ting] . . . an assault or battery to any person" or "threaten[ing] the use of force or violence upon another person." Under § 3323(f)(7), such conduct is a division "D" offense if the prisoner "[w]illfully resist[ed], delay[ed], or obstruct[ed] any peace officer in the performance of duty."

defendant Wheeler grabbed plaintiff's arm, plaintiff testified that he spun away and got down on the floor. *Id.* He testified that he "never resisted" defendant Wheeler. *Id.* The hearing officer also received the disciplinary report authored by defendant Wheeler, which tracks his declaration in support of the instant motion. *Id.* at 5-6. The library employee present at the time of the incident provided evidence that plaintiff "appeared to pull away from Officer Wheeler." *Id.* at 7. The hearing officer concluded that, contrary to his testimony, plaintiff had resisted defendant Wheeler by pulling away from his grasp and then continued to resist once on the ground by kicking and struggling. *Id.* at 6-7. Plaintiff was assessed 90 days loss of credit for the offense. *Id.* at 7.

## II.     Abridged Procedural History

This case was removed to this court from California state court on August 23, 2006. Dckt. No. 1. Defendants moved to dismiss plaintiff's retaliation claims on the grounds of exhaustion and that motion was denied on March 31, 2008. Dckt. No. 20. Defendants then moved for summary judgment on plaintiff's retaliation claim, arguing that plaintiff had conceded that his First Amendment activities had not been chilled by defendants' alleged conduct. Dckt. No. 31. The court denied the motion, concluding that there was a genuine dispute of material fact on the issue. Dckt. No. 46.

The parties filed their pretrial statements, the court issued a pre-trial order, and trial was scheduled. Dckt. Nos. 62, 63, 66. Several months later, and just over two months before trial was scheduled, defendants filed the instant motion. Dckt. No. 78.

## III.    Governing Law

Federal courts possess inherent power "'to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.'" *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989). Local Rule 151(b) of this court provides one type of restriction that a court may impose on a vexatious litigant. That rule provides, in pertinent part, "The provisions of

Title 3A, part 2, of the California Code of Civil Procedure [§§ 391-391.4], relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking." Under California Code of Civil Procedure § 391.1, incorporated into this court's local rules by Rule 151(b),

> In any litigation . . ., at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant.

In determining whether a plaintiff is a vexatious litigant without a reasonable probability of prevailing, the court must consider all material evidence. Cal. Civ. Proc. Code § 391.2.

**IV. Analysis**

The court will first consider whether the evidence shows that plaintiff has no reasonable probability of prevailing on his claims at trial. Plaintiff is pursuing two claims against defendants – that they used excessive force against him in violation of the Eighth Amendment and that they used such force in retaliation for his exercise of First Amendment rights. Defendants argue that there is no reasonable probability that plaintiff will prevail on these claims because they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and because the evidence shows that: (1) defendants' force was reasonable; (2) plaintiff was not engaging in any conduct protected by the First Amendment; (3) defendants' actions were not motivated by plaintiff's protected conduct; and (4) defendants' force advanced a legitimate penological purpose. The court will address each argument in turn.

      **A.**    **Plaintiff's Claims Are Not *Heck*-Barred**

The U.S. Supreme Court has held, where a judgment in the prisoner's favor in his § 1983 action would necessarily imply the invalidity of a deprivation of good-time credits, the plaintiff must first demonstrate that the credits deprivation has been invalidated in order to state a cognizable § 1983 claim. *Edwards v. Balisok*, 520 U.S. 641, 644, 647-48 (1997); *Heck v. Humphrey*, 512 U.S. 477, 483, 486-87 (1994); *Ramirez v. Galaza*, 334 F.3d 850, 855-56 (9th Cir.

7

2003). Defendants argument is premised on plaintiff's allegation that he did not resist at all. This is the basis, defendants argue, on which plaintiff concludes that the force was excessive. Thus, defendants reasons, a judgment in plaintiff's favor would necessarily imply that the hearing officer's determination that plaintiff was guilty of resisting was wrong and the consequent deprivation of credits was invalid. Thus, defendants claim, both of plaintiff's claims are barred by the rule announced in *Heck*.

In *Heck*, the Court repeatedly emphasized that a § 1983 claim is not cognizable only where a judgment in the plaintiff's favor would *necessarily* imply the invalidity of his conviction or sentence. 512 U.S. at 481-82, 487, 487 n.6-7. To illustrate the principle, the Court provided two examples. In the first, the hypothetical plaintiff sustained a conviction for resisting arrest – defined as intentionally preventing a peace officer from effecting a *lawful* arrest. *Id.* at 487 n.6 (emphasis in original). A subsequent § 1983 action premised on violation of the plaintiff's right to be free from unreasonable seizures would not be cognizable, because, to prevail, the plaintiff would have to negate an element of the offense of conviction (that the arrest had been lawful). *Id.* Thus, success in the § 1983 action would imply the invalidity of the conviction. In the second example, the hypothetical plaintiff suffered a conviction based on evidence obtained during a police search. *Id.* at 487 n.7. The plaintiff's subsequent § 1983 action challenged the search as unreasonable. *Id.* Because the evidence could have been admissible in the criminal trial even if the search was unreasonable under doctrines such as independent source and inevitable discovery, a judgment for the plaintiff in the § 1983 action would not *necessarily* invalidate the conviction. *Id.*

Here, the court is not persuaded that a finding that defendants' use of force was excessive in violation of the Eighth Amendment and/or retaliatory in violation of the First Amendment would necessarily imply the invalidity of the disciplinary finding that plaintiff willfully resisted defendants. To succeed on an excessive force claim, plaintiff must establish that defendants unnecessarily and wantonly inflicted pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). On the

evidence currently before the court, a factfinder could conclude that, even though plaintiff resisted the defendants, defendants nevertheless subjected plaintiff to unnecessary and wanton pain. *See id.* at 321 (noting that the following factors are relevant to a determination of whether a use of force violated the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response). It is not the law that, once a prisoner resists a correctional officer, the officer may use whatever amount of force he or she wishes to subdue the individual. *See Whitley*, 475 U.S. at 321. Accordingly, it is possible on the evidence presented by both sides in this case for a factfinder to conclude that plaintiff willfully resisted defendants but defendants nevertheless used an unconstitutional amount of force in response. Such a finding would not invalidate plaintiff's disciplinary conviction for resisting defendants. Accordingly, a judgment for plaintiff on his Eighth Amendment claim would not necessarily imply the invalidity of his disciplinary conviction and his claim is not *Heck*-barred.

Similarly, it is possible on the evidence in the case for a factfinder to conclude that, even though plaintiff forcefully resisted defendants, they responded with undue force in retaliation for plaintiff's statement that he intended to file a grievance against them. Since a judgment reached on such a rationale would not imply the invalidity of plaintiff's disciplinary conviction, plaintiff's retaliation claim is not *Heck*-barred.

    **B.**    **The Evidence Does Not Establish No Reasonable Probability that Plaintiff Will Succeed on His Eighth Amendment Claim**

Defendants argue that there is no reasonable probability that plaintiff will prevail on his Eighth Amendment claim because an analysis of the evidence according to the five factors provided in *Whitley* favors defendants. As mentioned above, the Supreme Court in *Whitley* indicated that five factors are relevant to determining whether a prison official used excessive

9

force: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response.  475 U.S. at 321.  Defendants characterize the evidence as showing that plaintiff was aggressive, noncompliant, and resistive, that his injuries resulted from his own misconduct and, in part, Sergeant Turner's conduct rather than defendants', and that defendants moderated their response because they did not use various weapons in the altercation (such as pepper spray or batons).

However, the evidence also shows that plaintiff was partially restrained in handcuffs attached to a waist-chain and that defendants' force was extreme enough to break his leg or ankle.  Additionally, plaintiff's evidence disputes defendants' evidence regarding how resistive and aggressive plaintiff's behavior actually was.  The evidence does not so clearly favor defendants that the court can say plaintiff has no reasonable probability of prevailing on his Eighth Amendment claim.

### C. The Evidence Does Not Establish No Reasonable Probability that Plaintiff Will Succeed on his Retaliation Claim

To prevail on his retaliation claim, plaintiff will have to establish that: (1) defendants took some adverse action against him (2) because (3) he engaged in protected conduct; (4) resulting in the chilling of his First Amendment rights or other more-than-minimal harm; and (5) the action did not reasonably advance a legitimate penological goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 & n.11 (9th Cir. 2003); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Defendants argue that the evidence shows that plaintiff did not engage in any protected activity, because he was not entitled to go to the program office and thus any grievance he filed against defendants for not taking him there would have been frivolous.  The evidence does not establish that plaintiff was not entitled to be taken to the program office.  While applicable

10

prison rules might not have provided plaintiff with such a right, plaintiff alleges that, by failing to take him there to use the only available stapler, defendants were blocking his ability to file papers in one of his court cases. Defendants have not established that any grievance or suit based on denial of access to the courts would have been frivolous.

Defendants next argue that the evidence shows that defendants did not act with a retaliatory motive. The sole evidence on this point are defendants' own declarations, the credibility of which is difficult to assess on a paper record. In addition, a factfinder could reasonably conclude based on the sequence of events – defendants used force shortly after plaintiff stated he intended to file a grievance against them – that defendants sought to retaliate against plaintiff.

Lastly, defendants argue that their force reasonably advanced a legitimate penological purpose. Again, the evidence before the court does not clearly favor defendants on this point. It is possible that a factfinder could conclude that, while institutional order and safety of inmates and correctional officers is a legitimate penological purpose, defendants did not act reasonably to advance that purpose.

## V. Conclusion and Recommendation

In sum, defendants' evidence does not establish that there is no reasonable probability that plaintiff will succeed on the merits of his claims. Accordingly, the court need not consider whether plaintiff's prior court actions qualify him as a "vexatious litigant" under California Code of Civil Procedure § 391.1, and an order requiring plaintiff to post a security under Local Rule 151(b) and California Code of Civil Procedure § 391.2 is not appropriate.

Accordingly, the undersigned recommends that defendants' January 3, 2011 motion to declare plaintiff a vexatious litigant be denied and that a trial date be reset.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

1 objections with the court and serve a copy on all parties. Such a document should be captioned
2 "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections
3 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
4 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
5 DATED: April 5, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE